UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

-----------------------------------------------------------------x

| | |
|---|---|
| JOHN QUILES and JEANETTE QUILES, Individually and as Mother and Natural Guardian for J.L.Q., a minor, J.A.Q., a minor, and MICHAEL J. BALANOFF, as Trustee in Bankruptcy of Johnny Quiles, a/k/a John Quiles<br><br>Plaintiffs,<br><br>-against-<br><br>BRADFORD-WHITE CORPORATION, TECUMSEH POWER COMPANY, MTD PRODUCTS INC., TSC INDUSTRIES, INC., TRACTOR SUPPLY COMPANY and KOHLER CO.,<br><br>Defendants. | Case No.: 3:10-cv-747<br>(TJM/DEP)<br><br>**COMPLAINT**<br><br><br><br>**Plaintiffs Demand Trial by Jury** |

-----------------------------------------------------------------x

Plaintiffs John and Jeanette Quiles, individually, and on behalf of their minor children J.L.Q. and J.A.Q., and Michael J. Balanoff as bankruptcy trustee for Johnny Quiles, a/k/a John Quiles by their attorneys Kreindler & Kreindler LLP, allege as follows:

### PARTIES AND JURISDICTION

1.    Plaintiffs John and Jeanette Quiles are and at all relevant times were, husband and wife and at all relevant times were residents of Apalachin, New York, residing with their two minor sons, J.L.Q. and J.A.Q., and bring this action for personal injuries, derivative lost services and property damage for a house fire caused by defendant's defective product. In addition, Michael J. Balanoff of Syracuse, New York has been appointed bankruptcy trustee for Johnny Quiles and is consequently a party at interest to claims made by John Quiles.

1

2. Defendant Bradford-White Corporation ("Bradford-White") is a Delaware Corporation, organized, incorporated and existing pursuant to the laws of the State of Delaware with its principal place of business in Ambler, Pennsylvania. It conducts regular business in the State of New York and was the manufacturer of a defective hot water heater that it sold in the State of New York that is the subject of this litigation.

3. Defendant, TECUMSEH POWER COMPANY (hereinafter "TECUMSEH") is upon information and belief, a foreign business corporation incorporated in the State of Delaware with a principal place of business located at 900 North Street Grafton, WI 53024.

4. At all times relevant hereinafter, TECUMSEH designed and manufactured engines, transmissions and other components for lawn mowers that are distributed and sold in the state of New York, and was licensed and authorized to do business in the State of New York.

5. It is upon information and belief that defendant TECUMSEH designed and manufactured the engine or other components for the subject "Huskee" riding lawn mower that was purchased by the plaintiffs, which subsequently failed and leaked gasoline and fumes which were ignited by the subject hot water heater causing the damages sustained on June 28, 2007 that is the subject to this action.

6. Defendant, TSC INDUSTRIES, INC. (hereinafter "TSC"), is upon information and belief, a foreign business corporation duly organized and existing pursuant to the laws of the State of Delaware, having its principal place of business located at 320 Plus Park Boulevard, Nashville, Tennessee 37217.

7. At all times relevant hereinafter, TSC sold outdoor lawn equipment among other various products, including "Huskee" riding lawn mower that was purchased by the plaintiffs, which subsequently failed causing the damages sustained on June 28, 2007 subject to this action.

8. Upon information and belief, TSC was licensed and authorized to do business in the State of New York.

9. Defendant, TRACTOR SUPPLY COMPANY (hereinafter "TRACTOR SUPPLY"), is upon information and belief, a foreign business corporation duly organized and existing pursuant to the laws of the State of Delaware, having its principal place of business located at 200 Powell Place, Brentwood, Tennessee 37027.

10. At all times relevant hereinafter, TRACTOR SUPPLY sold outdoor lawn equipment among other various products, including the "Huskee" riding lawn mower that was purchased by the plaintiffs, which subsequently failed causing the damages sustained on June 28, 2007 subject to this action.

11. Upon information and belief, TRACTOR SUPPLY was licensed, registered under the New York State Secretary of State, New York County and authorized to do business in the State of New York.

12. Defendant, MTD PRODUCTS INC. (hereinafter "MTD"), is upon information and belief, a foreign corporation duly organized and existing pursuant to the laws of the State of Ohio, having its principal place of business located at 5965 Grafton Rd., Valley City, OHIO, 44280.

13. At all times relevant hereinafter, MTD sold and manufactured outdoor lawn equipment among other various products, including "Huskee" riding lawn mowers that was purchased by plaintiffs.

14. It is upon information and belief that the subject lawn mower was a product sold under the brand name Huskee, which was made and/ or manufactured by defendant MTD products.

15. It is also upon information and belief that defendant Tractor Supply purchased and/ or acquired defendant MTD.

16. It is upon information and belief that defendant KOHLER CO. (hereinafter "KOHLER") is a foreign domestic corporation duly organized and existing pursuant to the laws of the State of Wisconsin, having its principle place of business located at 444 Highland Dr., Kohler, Wisconsin 53044.

17. At all times relevant hereinafter, KOHLER designed, manufactured, sold and distributed engines for lawnmowers among other various products, including the engine for the subject lawnmower that was purchased by the plaintiffs, which subsequently leaked fuel causing the damages sustained on June 28, 2007 subject to this action.

18. It is upon information and belief that KOHLER was licensed, registered under the New York State Secretary of State, and authorized to do business in the State of New York.

19. The above described defendants, TECUMSEH Power Company, TSC Industries Inc., Tractor Supply Company, MTD Products Inc., and Kohler Co. are hereinafter known as the "Lawn Mower defendants."

20. At all times relevant hereinafter, plaintiffs owned and/or occupied the premises located at 783 Summit Road, Apalachin, New York (the "premises").

21. Prior to June 28, 2007, the plaintiffs had purchased the subject riding lawn mower 54-inch cut, to use for personal use.

22. Upon information and belief, Lawn Mower defendants manufactured, distributed, sold, maintained and otherwise serviced the subject lawn mower and its components including the engine, which subsequently failed and leaked gasoline and fuel vapors that were ignited by

the subject hot water heater causing the damages sustained on June 28, 2007 that are the subject of this action.

23. Jurisdiction of this Court is founded upon diversity of Citizenship, 28 U.S.C. §1332 in that the parties are citizens of different states and the matter in controversy exceeds $75,000.

24. Venue in the Northern District of New York, at Binghamton is proper under 28 U.S.C. § 1391(a), in that the Quiles reside in the Binghamton area of the District, and the defective products were sold and caught fire causing injuries and property damages at plaintiffs' home in this District.

## GENERAL ALLEGATIONS

25. Plaintiffs repeat and reallege each and every allegation contained in paragraphs "1" through "24" as if fully set forth at length.

26. Defendant Bradford-White designs, manufactures, tests, writes operational safety manuals, provides instructions, stickers and decals, sells, distributes and places in the stream of commerce, hot water heaters used in residential homes in the State of New York, including but not limited to Model Number MI403S6CX12 (the "subject water heater").

27. The subject water heater was sold to the Quiles and installed in the basement of their home by an Agway local plumber during 2000. The water heater ran on propane gas that maintained a burning "pilot light" at all times to ensure that a certain amount of hot water is maintained in the tank at all times to supply hot water throughout the household on demand.

28. The Bradford-White water heater sold to the Quiles family did not include any design feature which would reduce the foreseeable likelihood that the pilot light could ignite

flammable vapors flowing at ground level. The open flame pilot light and burner was located only inches above the floor, had no flame arrestor and was not sealed.

29. On or about June 28, 2007, plaintiffs used the subject Huskee riding lawn mower until it began sputtering and experienced engine problems. The mower shut down and was later rolled into the garage. Unbeknownst to plaintiffs, the lawn mower began leaking gasoline and fuel vapors in the garage.

30. On or about June 28, 2007, in the evening, Jeanette Quiles and her 14 year old son J.L. went to the basement of their home to investigate the smell of gasoline vapors coming from the attached garage adjacent to the basement area that contained the subject water heater. When she opened the basement door to the garage, the subject water heater several feet behind her ignited the fuel vapors on the basement floor causing a sudden violent explosion, flash over and fire.

### FIRST CAUSE OF ACTION FOR STRICT PRODUCT LIABILITY AGAINST BRADFORD-WHITE

31. Plaintiffs repeat and reallege each and every allegation contained in paragraphs "1" through "30" as if fully set forth at length.

32. The subject water heater was defectively designed and manufactured and unreasonably dangerous and failed to warn of said dangers associated with the location of the gas fired pilot light in its proximity close to the ground without a flame arrestor, where volatile flammable fuel vapors often congregate.

33. Defendant sold the subject water heater in its defective and unreasonably dangerous condition in the stream of commerce knowing it would be used in residential basements. The subject water heater was not altered nor modified from the time it left

defendant's control through the moment of the incident and was used for its intended and anticipated purpose.

34. Alternative safer designs with flame arrestors, elevated pilot lights, sealed combustion areas that draw air from a location outside the room isolating the pilot light flame from expected external combustible vapors have been available since the early 1970s, long before the subject water heater was sold to the Quiles.

35. As a direct and proximate cause of the defective design, manufacture, instructions and warnings, the subject water heater ignited the basement of the Quiles' home in a ball of fire seriously injuring all four Quiles plaintiffs.

36. As a direct and proximate result of defendant's defective product, John, Jeanette and J.L.Q. suffered second and third degree burns requiring skin grafting surgeries; past, present and future physical, mental and emotional pain, suffering anguish and distress; severe scarring; smoke inhalation; past, present and future disability both temporary and permanent; residual impairment and disfigurement; loss of enjoyment of life; past, present and future, inability to provide household and other services; past, present and future medical services; and for John and Jeanette Quiles past, present and future earnings and/or impairment of wage earning capacity; for J.L.Q., loss of educational and recreational opportunities.

37. J.A.Q., age 11, was also injured to a lesser degree and caused to suffer physical, mental and emotional pain and suffering, anguish and distress, treated at the hospital and separated from his family during their hospitalization, medical treatment and convalesces.

38. The ensuing fire from defendant's defective product and its negligence, directly and proximately caused substantial damage to plaintiffs' residential home located at 783 Summit Road, Apalachin, New York, to wit:

   a. substantial damage to the structure of the home requiring partial demolition and reconstruction;
   b. substantial damage to the home's contents and personal property;
   c. required plaintiffs to reside elsewhere after their hospitalization until the home became habitable again.

39. As a result of the foregoing, plaintiffs have been damaged in the amount of $10,000,000.00 together with lost interest allowable by law and costs, disbursements and fees.

## SECOND CAUSE OF ACTION FOR NEGLIGENCE AGAINST BRADFORD-WHITE

40. Plaintiffs repeat and reallege each and every allegation contained in paragraphs "1" through "39" as if fully set forth at length.

41. Defendant had a duty of care to provide a safe and working hot water heater to the Quiles and other consumers who purchased its product.

42. The risk of an explosion, flash over and fire was well known by defendant and others in the industry and was a foreseeable and unreasonable risk to home owners. The failure to have a flame arrestor and/or a flame elevated at least 18 inches off the ground and/or a sealed combustion area to draw air from a safe location was careless, negligent and reckless and displayed wanton disregard for consumers and homeowners, including plaintiffs.

43. As a direct and proximate cause of defendant's negligence, defective design, manufacture, instructions and warnings, the subject water heater ignited the basement of the Quiles' home in a ball of fire seriously injuring all four Quiles plaintiffs.

44. As a direct and proximate result of defendant's defective product, John, Jeanette and J.L.Q. suffered second and third degree burns requiring skin grafting surgeries, past, present and future physical, mental and emotional pain, suffering anguish and distress, severe scarring, smoke inhalation, past, present and future disability both temporary and permanent, residual impairment and disfigurement, loss of enjoyment of life, past, present and future, inability to

provide household and other services, past, present and future medical services, and for John and Jeanette Quiles past, present and future earnings and/or impairment of wage earning capacity; for J.L.Q., loss of educational and recreational opportunities.

45. J.A.Q., age 11, was also injured to a lesser degree and caused to suffer physical, mental and emotional pain and suffering, anguish and distress, treated at the hospital and separated from his family during their hospitalization, medical treatment and convalesces.

46. The ensuing fire from defendant's defective product and its negligence, directly and proximately caused substantial damage to plaintiffs' residential home located at 783 Summit Road, Apalachin, New York, to wit:

    a. substantial damage to the structure of the home requiring partial demolition and reconstruction;
    b. substantial damage to the home's contents and personal property;
    c. required plaintiffs to reside elsewhere after their hospitalization until the home became habitable again.

47. As a result of the foregoing, plaintiffs have been damaged in the amount of $10,000,000.00 together with lost interest allowable by law and costs, disbursements and fees.

### THIRD CAUSE OF ACTION AGAINST ALL LAWN MOWER DEFENDANTS FOR NEGLIGENCE

48. Plaintiff fully incorporates by reference the averments contained in paragraphs "1" through "47" inclusive.

49. The occurrence referred to in paragraphs "29-30" and the consequent damage to the plaintiff's insureds' property was proximately caused by the negligence, negligence per se, gross negligence, carelessness and negligent omissions of the Lawn Mower defendants, their agents, servants, workmen and/or employees in:

    (a) Supplying an unreasonably dangerous and defectively manufactured and/or designed product, which it knew or should have known subjected

                plaintiff's insureds' to an unreasonable risk of harm from leaking gasoline and fuel vapors;

(b) failing to adequately, properly and safely design, assemble, inspect and test the product and/or its internal components including the engine and fuel line(s);

(c) selling the aforementioned product and internal components in a defective condition unreasonably dangerous to Plaintiffs' insureds and their property;

(d) failing and omitting to do and perform those things necessary to avoid and unreasonable risk of harm to plaintiff's insureds' and its property and to render the operation of the aforementioned device safe and proper;

(e) failing to warn customers, including plaintiff's insureds, about the substantial risk of fire damage by the normal and intended use of the product;

(f) failing to maintain and service the lawn mower in a proper manner;

(g) failing to diagnose a defective condition in the lawn mower;

(h) failing to properly fix a defective condition existing in the lawn mower;

(i) failing to provide adequate instruction and/or warning with respect to the proper operation, maintenance, and care of the product;

(j) failing to maintain and service the vehicle in a proper manner;

(k) failing to diagnose a defective condition in the vehicle; and

(j) otherwise failing to use due care under the circumstances.

50. As a direct and proximate cause of the aforesaid negligence per se, negligence, carelessness, recklessness, gross negligence and negligent acts and omissions of the Lawn Mower defendants and their representatives, agents, servants and/or employees, leaking fuel provided the source of the fire that was ignited by the defective hot water heater resulting in damage and personal injuries to plaintiffs described in ¶¶ 36-38, and destruction to the property and loss to the plaintiffs.

51. As a result of the foregoing, plaintiffs have been damaged in the amount of $10,000,000.00 together with lost interest allowable by law and costs, disbursements and fees.

### FOURTH CAUSE OF ACTION AGAINST LAWN MOWER DEFENDANTS FOR STRICT PRODUCTS LIABILITY

52. Plaintiff repeats and re-alleges the allegations contained in paragraph "1" through "51".

53. The fire referred to above and the consequent damage and personal injuries to plaintiffs and their property were caused by the defective and unreasonably dangerous condition of the product which was designed, manufactured and sold by the Lawn Mower defendants and for which defendants are strictly liable under the laws of the State of New York for the following reasons:

    (a) Lawn Mower defendants' product was defectively manufactured, designed and/or sold because its normal and intended use posed an unreasonable risk of harm to plaintiffs and their property by allowing a dangerous fuel leak that was ignited and caused an explosion and fire;

    (b) The product was not accompanied by adequate instructions and/ or warnings directed to the product user which would have minimized or eliminated the substantial risks of damage associated with the product's use; and;

    (c) The normal, foreseeable and/ or intended use of the Lawn Mower defendants' product as designed and manufactured, posed a substantial risk of damage that was not reasonably contemplated by plaintiffs.

54. As a proximate and direct result of the aforesaid acts, the fire referred to above took place and resulted in personal injuries to plaintiffs described in ¶¶ 36-38 and destruction to plaintiff's property and contents.

55. As a result of the foregoing, plaintiffs have been damaged in the amount of $10,000,000.00 together with lost interest allowable by law and costs, disbursements and fees

## FIFTH CAUSE OF ACTION FOR CONSORTIUM DAMAGES FOR JOHN QUILES

56. Plaintiff John Quiles repeats and realleges each and every allegation contained in paragraphs "1" through "55" as if fully set forth herein.

57. Plaintiff John Quiles is the husband of plaintiff Jeanette Quiles.

58. As a result of the bodily and mental and emotional injuries suffered by his wife, plaintiff, Jeanette Quiles, caused by defendants, plaintiff John Quiles has rendered extra ordinary

11

services and care for his wife and has been deprived of the services, society, advise, counsel, companionship and consortium of his wife Jeanette Quiles and has incurred expenses for her medical care and other expenses.

59.   As a result of the foregoing, plaintiff John Quiles has been damaged in the amount of $100,000.00.

## SIXTH CAUSE OF ACTION FOR
## CONSORTIUM DAMAGES FOR JEANETTE QUILES

60.   Plaintiff Jeanette Quiles repeats and realleges each and every allegation contained in paragraphs "1" through "59" as if fully set forth herein.

61.   Plaintiff Jeanette Quiles is the wife of plaintiff John Quiles.

62.   As a result of the bodily and mental and emotional injuries suffered by her husband, plaintiff, John Quiles, caused by defendants, plaintiff Jeanette Quiles has rendered extra ordinary services and care for her husband and has been deprived of the services, society, advise, counsel, companionship and consortium of her husband John Quiles and has incurred expenses for her medical care and other expenses.

63.   As a result of the foregoing, plaintiff Jeanette Quiles has been damaged in the amount of $100,000.00.

WHEREFORE, plaintiffs demand judgment against defendant Bradford-White and the Lawn Mower defendants in the amount of TEN MILLION DOLLARS ($10,000,000.00), on causes of action ONE, TWO, THREE and FOUR together with interest allowable by law and costs, disbursements and fees of these actions and $100,000 for causes of action FIVE AND SIX.

## DEMAND FOR JURY TRIAL

Plaintiffs hereby demand a trial by jury.

KREINDLER & KREINDLER LLP          LEVENE GOULDIN & THOMPSON LLP

_____        By: s/ _____
Andrew J. Maloney, Esq.                Philip C. Johnson, Esq.
Justin G. Green, Esq.                  pjohnson@binghamtonlaw.com
100 Park Avenue                        Maria Lisi-Murray
New York, NY 10017                     Michael Wright (Bar Roll No. 102848)
(212) 687-8181                         450 Plaza Drive
amaloney@kreindler.com                 PO Box F-1706
                                       Binghamton, NY 13902-0106
                                       (607) 763-9200
                                       (607) 763-9211 Fax

                                       *Attorneys for Plaintiffs*